UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JASON REIMUNDO PALACIO,

    Defendant.

Case No. 19-cr-20275
Hon. Matthew F. Leitman

_____/

# ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 16)

Defendant Jason Reimundo Palacio is charged with three federal offenses: possession of a firearm in furtherance of a drug trafficking crime, possession of a firearm by a felon, and possession with intent to distribute cocaine. (*See* Indictment, ECF No. 9.) The charges are based, in part, upon evidence that police seized while searching his residence pursuant to a search warrant. Palacio now moves to suppress that evidence. (*See* Mot. to Suppress, ECF No. 16.) He argues that the affidavit submitted in support of the warrant requested failed to establish probable cause. (*See id.*) For the reasons explained below, the motion is **DENIED**.

I

On April 16, 2019, Michigan State Trooper Lucas Mickelson applied to Michigan's 67th District Court for a warrant to search a residence located at 2404 S. Dye Road in Flint Township (the "Residence"). (*See* Affidavit and Application for

1

Search Warrant, ECF No. 16-2, PageID.51-55.) Mickelson submitted an affidavit in support of his request. (*See id.*) In the affidavit, Mickelson first stated that he had been a Michigan "peace officer" for three years, that he had roughly "two years of cumulative experience in controlled substance investigations," and that he had "received education in the identification of all types of controlled substances and the customs and habits of users and dealers of the same." (*Id.* at ¶¶ 1-3, PageID.51.) Mickelson added that he was currently assigned to the Flint Area Narcotics Group ("FANG"). (*Id.* at ¶¶ 1, PageID.51.)

Mickelson then said that he had probable cause to believe that evidence of drug dealing would be found at the Residence. (*See id.* at ¶6, PageID.52.) Mickelson based his probable cause determination upon his "personal knowledge, on the personal knowledge of his fellow officers … and on the personal knowledge" of an unidentified confidential informant. (*Id.*) Mickelson expressed his "belie[f] that the [confidential informant] is credible and reliable for the reason that he/she has made other controlled purchases of controlled substances in the past, monitored by [Mickelson] and/or fellow officers, wherein the items of controlled substance sought to be purchased was successfully obtained and [the confidential informant] has never given [Mickelson] false or misleading information." (*Id.* at ¶7, PageID.52.) Mickelson referred to the confidential informant as "XX." (*Id.*)

Mickelson next set forth the following facts that, in his opinion, established probable cause to search the Residence:

> 8. That information concerning the possession/sale and/or delivery of the above-referenced controlled substance was related to your affiant directly by XX; and that based on this information and the information about the informant specified supra paragraph 7, your affiant believes that said informant is a person who is credible and reliable. That your affiant desires to keep XX anonymous because anonymity has been requested, and because in my experience narcotics informants often become the victims of physical, social and emotional retribution when their identities are disclosed, and because it has been my experience that to reveal the identity of such person seriously impairs their utility to law enforcement, and has the additional impact of preventing other citizens from disclosing confidential information to law enforcement officers.
>
> 9. That on 03/25/19 your affiant and Tpr. Richter met XX at a prearranged meet location and a thorough search of his/her person was conducted and no drugs or contraband were found by affiant. Tpr. Richter then provided XX with a quantity of pre-recorded currency.
>
> 10. That your affiant states that XX also related that he/she has been sold suspected cocaine from a subject known as "JASON." XX advised that "JASON" lives at 2404 S Dye Rd. XX has bought cocaine from "JASON" numerous times before. A LEIN/SOS check was done on the residence, 2404 S Dye Rd. It was found that a male named JASON REIMUNDO PALACIO (W/M DOB: 04/24/1979) was attached to the address. A picture was shown to XX of PALACIO. XX confirmed that was the suspect who had sold him/her cocaine in the past.

11. That XX has knowledge that PALACIO is in possession of two assault style rifles and one AK style rifle inside his residence (2404 S Dye Rd).

12. A Criminal History Check was conducted on PALACIO. It was found that he is a convicted felon. PALACIO has a criminal history including crimes against persons, weapons charges as well as a delivery of narcotics charge. In 2003 Palacio pled guilty to felony OWI, in 2008 he pled guilty to assault and battery, in 2009 he was charged with delivery of controlled substance 50-499 grams and in 1996 he was charged with felony assault with a dangerous weapon.

13. That other FANG officers had set up surveillance on the residence herein described in paragraph 5 prior to XX meeting the suspect to purchase a quantity of cocaine. Ofc. VanBuskirk observed a pick-up truck exit the driveway of 2404 S Dye Rd. shortly after XX called the suspect and requested to meet. Officers conducted surveillance on the suspect vehicle until it arrived at a prearranged meet location to meet XX. The pick-up truck did not stop anywhere while on the way to meet XX. A white male was observed exiting the pick-up truck and entering XX's vehicle. After a short period of time the male exited the vehicle and left in his pick-up truck. The suspect was then followed directly back to his residence by officers.

14. XX arrived back at the prearranged meet location where he/she handed affiant a packaged white substance believed to be cocaine, and based on your affiant's training and experience it appeared to be an amount of cocaine that matched the amount of money given to XX.

15. That XX was again thoroughly searched by affiant and Tpr. Richter and was found not to have any other controlled substance and/or money on his/her person by affiant. Further, XX was kept under a continuous

surveillance by your affiant and other FANG officers during the sequence of events detailed in paragraphs 9 through 15.

16. That your affiant states that XX also related that he/she was sold the above described suspected controlled substance from "JASON" at the prearranged meet area while inside XX's vehicle. XX stated that he/she handed PALACIO the prerecorded U.S. Currency and was given the plastic bag containing suspected cocaine in exchange.

17. That on within the last 24 hours, your affiant and Tpr. Richter met XX at a prearranged meet location and a thorough search of his/her person was conducted and no drugs or contraband were found by affiant. Tpr. Richter then provided XX with a quantity of prerecorded currency.

18. That other FANG officers had set up surveillance on the residence herein described in paragraph 5 prior to XX meeting the suspect to purchase a quantity of cocaine. Ofc. Babcock observed a pick-up truck exit the driveway of 2404 S Dye Rd. shortly after XX called the suspect and requested to meet. FANG Officers conducted surveillance on the suspect vehicle until it arrived at a prearranged meet location to meet XX. The pick-up drove directly from his residence to the meet location without any stops. A white male was observed exiting the pick-up truck and entering XX's vehicle. After a short period of time the male exited the vehicle and left in his pick-up truck. The suspect was then followed directly back to his residence by officers.

19. XX arrived back at the prearranged meet location where he/she handed affiant a packaged white substance believed to be cocaine, and based on your affiant's training and experience it appeared to be an amount of cocaine that matched the amount of money given to XX.

5

20. That XX was again thoroughly searched by affiant and Tpr. Richter and was found not to have any other controlled substance and/or money on his/her person by affiant. Further, XX was kept under a continuous surveillance by your affiant and other FANG officers during the sequence of events detailed in paragraphs 17 through 19.

21. That your affiant states that XX also related that he/she was sold the above described suspected controlled substance from "JASON" at the prearranged meet area while inside XX's vehicle. XX advised while meeting, he/she and PALACIO exchanged the prerecorded U.S. Currency and the suspected cocaine.

22. Tpr. Richter was able to perform a TruNarc test on the suspected cocaine from both incidents. Tpr. Richter obtained a positive result for cocaine.

(*Id.* at ¶¶ 8-22, PageID.52-54.)

On April 16, 2019, a judge of the 67th District Court reviewed Mickelson's affidavit, agreed with Mickelson that the facts set forth in the affidavit established probable cause to search the Residence, and issued a warrant to search the Residence. (*See* Warrant, ECF No. 16-2, PageID.49-50.) Two days later, on April 18, 2019, Mickelson and other officers executed the search warrant at the Residence. (*See* Police Report, ECF No. 17-2, PageID.75.) During the search, they found and seized, among other things, several firearms, a clear plastic baggie containing suspected cocaine, $3,000 in cash, and two digital scales. (*See id.*, PageID.77.)

The grand jury returned the indictment against Palacio on May 2, 2019. (*See* Indictment, ECF No. 9.) He filed this motion to suppress on July 29, 2019. (*See* Mot. to Suppress, ECF No. 16.) The Court did not hold an evidentiary hearing on the motion because the motion does not depend upon the resolution of any factual disputes. Instead, the sole issue raised in the motion is whether the facts set forth in Mickelson's affidavit established probable cause to search the Residence. The Court concludes that it may properly decide that issue based upon a review of the motion and response and without oral argument. *See* E.D. Mich. Local Rule 7.1(f)(2).

## II

Palacio and the Government vigorously dispute whether Mickelson's affidavit established probable cause to search the Residence. Palacio argues that the affidavit fell short because "without more, the controlled buys [described in the affidavit] were insufficient" to establish probable cause. (Mot. to Suppress, ECF No. 16, PageID.42.) Palacio adds that the controlled buys described in the affidavit were "insufficient" because the "police did not utilize adequate controls" to ensure that the confidential informant "arrived clean." (*Id.* at PageID.43.) Palacio further highlights that the police did not transport the informant to the buys and that police did not search the informant's vehicle for drugs prior to the buys. (*See id.*) The Government counters that the facts described in Mickelson's affidavit "mirror those in *United States v. Jones*, 817 F.3d 489, 490 (6th Cir. 2016)." (Gvt. Resp. Br., ECF

No. 17, PageID.61.) The Government insists that *Jones* "basically forecloses [Palacio's] argument that [Mickelson's] affidavit does not establish probable cause." (*Id.* at PageID.61-62.)

While the Government appears to have the better argument here, the Court declines to decide whether the warrant to search the Residence was supported by probable cause. Instead, the Court exercises its discretion to "turn immediately to consider the application of the *Leon* good faith exception." *United States v. Ware*, 338 F.3d 476, 481-81 (6th Cir. 2003) (citing *United States v. Leon*, 468 U.S. 897, 925 (1984)).

The United States Court of Appeals for the Sixth Circuit thoroughly explained the relevant aspects of the *Leon* good faith exception in *United States v. White*, 874 F.3d 490 (6th Cir. 2017). There, the court wrote:

> In *United States v. Leon*, the Supreme Court created an exception to the exclusionary rule for evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In a break from the previously reflexive and uncompromising approach of excluding all evidence seized without probable cause, the Supreme Court established a new objective inquiry limiting suppression to circumstances in which the benefits of police deterrence outweigh the heavy costs of excluding "inherently trustworthy tangible evidence" from the jury's consideration. *Id.* at 907, 104 S.Ct. 3405. Following *Leon*, courts presented with a motion to suppress claiming a lack of probable cause must ask "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's

8

decision." *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (quoting *Leon*, 468 U.S. at 923 n.23, 104 S.Ct. 3405). Only when the answer is "yes" is suppression appropriate.

To aid courts in resolving this question, *Leon* outlined four circumstances in which an officer's reliance would *not* be objectively reasonable. *Leon*, 468 U.S. at 914–15, 923, 104 S.Ct. 3405. We deal here with the third scenario: when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. 3405 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).

An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a "bare bones" affidavit. *See United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996). A bare-bones affidavit, in turn, is commonly defined as one that states only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (quoting *Weaver*, 99 F.3d at 1378). Put more simply, a bare-bones affidavit is a conclusory affidavit, one that asserts "only the affiant's belief that probable cause existed." *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000) (quoting *United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993)). It provides nothing more than a mere "guess that contraband or evidence of a crime would be found," *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994), either "completely devoid" of facts to support the affiant's judgment that probable cause exists, *United States v. Carpenter*, 360 F.3d 591, 595–96 (6th Cir. 2004) (en banc), or "so vague as to be conclusory or meaningless." *United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005) (quoting *Carpenter*, 360 F.3d at 596).

In contrast, an affidavit is not bare bones if, although falling short of the probable-cause standard, it contains "a minimally sufficient nexus between the illegal activity and the place to be searched." *Carpenter*, 360 F.3d at 596. If the reviewing court is "able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been"—"some modicum of evidence, however slight"—"between the criminal activity at issue and the place to be searched," then the affidavit is not bare bones and official reliance on it is reasonable. *Laughton*, 409 F.3d at 749–50.

A bare-bones affidavit should not be confused with one that lacks probable cause. An affidavit cannot be labeled "bare bones" simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding; rather, it must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it. *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003). The distinction is not merely semantical. There must be daylight between the "bare-bones" and "substantial basis" standards if *Leon*'s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function. *See Leon*, 468 U.S. at 906–07, 913–21, 104 S.Ct. 3405; *Carpenter*, 360 F.3d at 595. Only when law enforcement officials operate in " 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights" will the "heavy toll" of suppression "pay its way." *Davis v. United States*, 564 U.S. 229, 237–38, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), and *Leon*, 468 U.S. at 908 n.6, 104 S.Ct. 3405). Otherwise, "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful," excluding evidence recovered as a result of a technically deficient affidavit serves no useful purpose under the exclusionary rule. *Id.* at 238, 131 S.Ct. 2419 (quoting *Leon*, 468 U.S. at 909, 919). We must

> therefore find that the defects in an affidavit are apparent in the eyes of a reasonable official before faulting an executive official for complying with his or her duty to execute a court-issued order. *Leon*, 468 U.S. at 921 ("[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." (quoting *Stone v. Powell*, 428 U.S. 465, 498, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring))).

*White*, 874 F.3d at 496–97 (footnote omitted).

Mickelson's affidavit was not "bare bones" because it included far more than his mere "belief that probable cause existed." *Id.* at 496 (internal quotation omitted). It described controlled buys from Palacio and explained that Palacio had made prior additional drug sales to the confidential informant. It also explained the factual basis for Mickelson's conclusion that the confidential informant was reliable. Finally, the affidavit described surveillance of Palacio that provided at least "some connection, regardless of how remote it may have been" between Palacio's drug dealing and the Residence. *Id.* at 496-97. Given all of this factual content, the affidavit was not "*so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *Id.* (emphasis in original). Thus, even if the affidavit did not establish probable cause to issue the warrant, *Leon's* good faith exception applies, and suppression is not warranted. *See id.*

Indeed, it is especially appropriate to apply the good faith exception here because the affidavit has important similarities to the affidavit in *Jones* – which the Sixth Circuit found sufficient to establish probable cause. Both affidavits described

11

(1) information from a confidential informant identifying the suspect as a drug dealer, (2) at least one controlled buy from the suspect that occurred within 48 hours of the application for the search warrant, and (3) surveillance of the suspect as he travelled from his residence to the controlled buy and returned to his residence. *See Jones*, 817 F.3d at 490. Given these similarities, Mickelson reasonably could have concluded that since the *Jones* affidavit was sufficient to establish probable cause, his affidavit was likewise sufficient.[1] Under these circumstances, suppression of the evidence seized pursuant to the warrant here is not warranted.

### III

For all of the reasons explained above, **IT IS HEREBY ORDERED** that Palacio's Motion to Suppress (ECF No. 16) is **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: September 10, 2019

---

[1] The affidavit in *Jones* is arguably stronger than Mickelson's affidavit because the confidential informant in *Jones* said that the suspect was dealing drugs "from" the residence to be searched. *Jones*, 817 F.3d at 490. But that does not mean that it would have been unreasonable for Mickelson to conclude, based upon *Jones*, that his affidavit established probable cause. As noted above, the Court takes no position as to whether Mickelson's affidavit actually was sufficient to establish probable cause. The Court concludes only that it was not unreasonable for Mickelson to conclude that the affidavit was sufficient to do so.

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 10, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda  
Case Manager  
(810) 341-9764